IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Philip A. Brimmer

Civil Action No. 05-cv-02467-PAB-KLM

MOHAMMED SALEH,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.
_____

Civil Action No. 06-cv-01747-PAB-KLM

EL-SAYYID A. NOSAIR,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant.
_____

Civil Action. No. 07-cv-00021-PAB-KLM

IBRAHIM ELGABROWNY,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant.
_____

**ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATIONS**
_____

This matter is before the Court on defendant's motion for summary judgment [Docket No. 295], filed March 22, 2010, and defendant's supplement to their motion [Docket No. 337], filed August 27, 2010. This matter is also before the Court on plaintiffs' motion for partial summary judgment [Docket No. 296], filed March 22, 2010. Both motions and the supplement were referred to Magistrate Judge Kristen L. Mix [Docket Nos. 298, 335] and were fully briefed by the parties [Docket Nos. 323, 333, 312, 324, 338, 339]. Magistrate Judge Mix issued a thorough Recommendation of United States Magistrate Judge [Docket No. 350] on November 23, 2010. Both plaintiffs and defendant timely filed objections to the recommendation [Docket Nos. 351, 352], and responses to these objections [Docket Nos. 358, 360]. Plaintiffs further filed a motion for oral argument [Docket No. 354]. The Court finds that, given the extensive briefing on these issues, oral argument would not materially assist the Court. *See* D.C.Colo.LCivR 7.1(g). The Court therefore takes up the motions in light of the parties' objections and conducts the requisite de novo review.

## I. BACKGROUND

The magistrate judge's recommendation contains a comprehensive recitation of the factual and procedural history of this case. Briefly, plaintiffs are incarcerated in the Federal Bureau of Prisons ("BOP") following their convictions for seditious conspiracy and other terrorism-related offenses after a nine-month jury trial in the United States District Court for the Southern District of New York. *See United States v. Rahman*, 189 F.3d 88, 103 (2d Cir. 1999). Docket No. 350 at 3. Immediately following the September 11, 2001 attacks on the World Trade Center, plaintiffs were placed in

segregation at the facilities where they were housed at the time. *Id.* In late 2002 and early 2003, the BOP reassigned plaintiffs to the United States Penitentiary, Administrative Maximum Prison ("ADX") in Florence, Colorado. *Id.* Plaintiffs filed this lawsuit challenging the conditions of their confinement.

Plaintiffs' two remaining claims[1] are Fifth Amendment procedural due process claims relating to their placement in the general population unit at ADX ("claim four") and the denial of their admission to the Step-Down unit program ("claim five"). Docket No. 350 at 5-6. The magistrate judge recommended that defendant's summary judgment motion and supplement be granted and that plaintiffs' summary judgment motion be denied. Docket No. 350 at 36. In so doing, the magistrate judge considered the threshold matter of whether events occurring after the filing of plaintiffs' claims had rendered them moot. She concluded that claim four was not moot as to all plaintiffs and claim four was not moot as to the plaintiffs remaining at ADX. Docket No. 350 at 9-12. Defendant objects to only this portion of the recommendation, arguing that mootness provides an alternative basis for granting summary judgment. Docket No. 351 at 1. Plaintiffs object to the remainder of the recommendation, arguing that summary judgment for defendant is improper. Docket No. 352 at 1. The Court will consider these objections in turn.

---

[1] The parties have stipulated to the dismissal of claims one, two, three, and six. See Docket No. 265 at 3 n.1 and 4 n.2.

## II. ANALYSIS

### A. Standard of Review

When a party files timely objections to a magistrate judge's recommended disposition of a dispositive motion, a district court reviews the objected-to portion of the recommendation de novo. Fed. R. Civ. P. 72(b).

### B. Mootness

Defendant argues that all of plaintiff Elgabrowny's claims are moot because he has successfully completed the ADX Step-Down program and is no longer incarcerated at ADX. Docket No. 295 at 25. Defendant additionally argues that both claims are moot as to all plaintiffs because each plaintiff has now received a retroactive hearing regarding his transfer to ADX and been admitted to the Step-Down program. Docket No. 295 at 26. The magistrate judge disagreed with the defendant, finding that these events did not moot plaintiffs' claims.[2] Docket No. 350 at 10-12.

Defendant objects to this portion of the recommendation. Docket No. 351 at 1. As to plaintiff Elgabrowny, defendant is correct that, if his claim for injunctive relief were merely challenging the conditions of his confinement at ADX, it would be moot since he has been transferred out of ADX. *See Crocker v. Durkin*, 53 F. App'x 503, 505 (10th Cir. 2002) (stating that the Tenth Circuit has repeatedly refused the recognize that the possibility an inmate may be transferred back to an institution whose policies he

---

[2] The magistrate judge noted that, as plaintiffs had conceded, claim five is moot as to plaintiff Elgabrowny. Docket No. 350 at 11. Neither party disputes this finding. Since completion of the summary judgment briefing, plaintiff Nosair has also been transferred out of ADX, and plaintiffs concede that claim five is also now moot as to Mr. Nosair. *See* Docket No. 360 at 10 n.4.

challenges creates an exception to the mootness doctrine). But plaintiffs' fourth claim does not merely challenge the conditions at ADX; it challenges the process by which plaintiffs were placed at ADX. Moreover, Mr. Elgabrowny's ADX placement continues to affect the conditions of his confinement despite his transfer out of the institution. *See* Docket No. 323 at 2. Were the Court to order the BOP to provide plaintiffs additional process to determine whether their transfers to ADX were proper, this new process could result in a finding that plaintiffs were not properly placed in ADX in the first place and thus should be restored to their pre-ADX status and corresponding placements. That the BOP has provided plaintiffs with retroactive hearings regarding their placement does not preclude the Court from considering whether these hearings were constitutionally deficient. Therefore, claim four is not moot as to any of the plaintiffs. *See Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003) (mootness does not apply where parties retain a legally cognizable interest in the outcome).

Defendant argues that claim five is moot as to plaintiff Saleh because he has been admitted to the Step-Down program and the Step-Down admission policy has been modified so that it no longer requires inmates to mitigate the reasons for their original transfer to ADX.[3] *See* Docket No. 351 at 4-5. Although courts generally trust that a change in government policy is not merely a "transitory litigation posture,"

---

[3] Mitigation in this context requires inmates to demonstrate that they no longer require ADX placement. Inmates transferred to ADX because of incidents at other facilities may show mitigation by demonstrating that they can function in a less restrictive environment. Plaintiffs, however, contend that they could not mitigate the reasons for their placement because they were placed in ADX for reasons outside their control, specifically, world events. *See* Docket No. 251 at 12-13, ¶¶ 72, 73.

*America Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (collecting cases), Saleh's fifth claim is not based solely on his contention that admission to the Step-Down program requires him to prove mitigation of the reasons for his original placement.  Saleh continues to argue that, even with the modification in Step-Down procedures, he has been denied meaningful participation in the Step-Down process.  *See* Docket No. 251 at 29, ¶ 201; Docket No. 323 at 18-19.  There is a possibility that Mr. Saleh will be removed from the Step-Down program and, if he is, his readmission will be subject to procedures plaintiffs challenge as insufficient under the Fifth Amendment.  Therefore, claim five is not moot as to plaintiff Saleh.

For these reasons, the Court agrees with and adopts the magistrate judge's finding that claim four is not moot as to all plaintiffs and claim five is not moot as to plaintiff Saleh.

### C. Due Process

Defendant seeks summary judgment on claims four and five on the ground that plaintiffs have insufficient evidence that (a) they possess a protected liberty interest in their confinement at ADX and (b) the process afforded by the BOP is insufficient to protect that interest.  In response, plaintiffs argue that the conditions at ADX are extreme and plaintiffs' incarcerations there are indefinite such that placement in ADX's general population unit implicates a liberty interest.  Plaintiffs further argue that BOP's modified procedures both for placement in ADX and participation in the Step-Down program are constitutionally inadequate.  The magistrate judge recommended granting defendant's motion for summary judgment, finding that plaintiffs did not have a liberty

interest and, thus, that inquiry into whether BOP's procedures are adequate was unnecessary. Docket No. 350 at 13-36.

In analyzing whether plaintiffs have a protected liberty interest, the magistrate judge relied on the four factors outlined by the Tenth Circuit in *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). In *DiMarco*, the Tenth Circuit interpreted two major Supreme Court cases on the question of prisoners' Fifth Amendment due process rights, *Sandin v. Conner*, 515 U.S. 472 (1995), and *Wilkinson v. Austin*, 545 U.S. 209 (2005). In *Sandin*, the Supreme Court considered whether a state prison's imposition of disciplinary segregation for misconduct implicated a liberty interest so as to give rise to due process protections and found that the segregation at issue did not create a liberty interest because it did not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. In *Wilkinson*, the Supreme Court found inmates at a state Supermax facility possessed a liberty interest based on the extreme conditions of their confinement, the indefinite duration of their placement, and the fact that transfer to the facility automatically disqualified an otherwise eligible inmate for parole consideration. 545 U.S. at 223-24. Although both *Sandin* and *Wilkinson* require a court to determine whether the conditions of incarceration are "atypical," neither case resolved the question of what baseline courts should use to measure the typicality of a given set of confinement conditions. *See Wilkinson*, 545 U.S. at 223 (finding that the question need not be resolved because the Court was satisfied assignment to the facility imposed "an atypical and significant hardship under any plausible baseline").

In analyzing the typicality of conditions of confinement, the *DiMarco* court noted inconsistent precedents in the circuit and concluded that it was inappropriate for courts to engage in an "either/or assessment" of conditions. *DiMarco*, 473 F.3d at 1342. "Rather, it makes sense to look at a few key factors, none dispositive." *Id.* *DiMarco* concluded that "[r]elevant factors might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of confinement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson*; and (4) the placement is indeterminate." *Id.* The magistrate judge applied these factors in finding that plaintiffs did not have a liberty interest in their confinement at ADX. The Court will also consider each of these "*DiMarco* factors" in turn. Plaintiffs' objections take issue with the magistrate judge's analysis, arguing that it impermissibly compares the conditions at ADX to those discussed in *Wilkinson* and thus ignores the totality of the circumstances.

### 1. Legitimate Penological Interest

The magistrate judge found defendant had established a legitimate penological interest in housing plaintiffs at ADX and that plaintiffs had failed to raise a material factual dispute about the existence of this interest. Docket No. 350 at 17-21. Plaintiffs object to the magistrate judge's analysis of this factor, arguing that a genuine dispute exists about whether BOP had a legitimate reason for transferring plaintiffs to ADX and that the magistrate judge impermissibly allowed this factor to override the other *DiMarco* considerations. Docket No. 352 at 7-8, 14-15.

Plaintiffs submitted the testimony of two BOP officials explaining that plaintiffs were transferred to ADX soon after September 11, 2001 because of their affiliations with international terrorist organizations. Docket No. 296-19 at 3-4 (Vanyur Depo.); Docket No. 297-10 at 3-4 (Junk Depo.). This evidence shows that the events of September 11 made the BOP specifically concerned about plaintiffs' ability to communicate with the outside world and that ADX was the only facility in existence at the time that would allow complete monitoring of plaintiffs' communications. Docket No. 296-19 at 3-4. Plaintiffs argue that this could not have been defendant's actual reason for transferring them to ADX because other inmates with international terrorist designations were not similarly transferred. Docket No. 352 at 14-15. The testimony demonstrates, however, that the inmates with an international terrorist designation who were transferred to ADX had particular affiliations and backgrounds. Docket No. 296-19 at 3-4. As to plaintiffs specifically, Mr. Vanyur testified that each of the plaintiffs had been linked to terrorist plots involving bombings in New York City and it was this background, along with their links with international terrorist organizations, that merited plaintiffs' transfer to ADX. Docket No. 296-19 at 3.

Finally, plaintiffs argue that their transfers could not have served a legitimate penological interest because, unlike most prisoners transferred to ADX, they were able to safely function in less restrictive environments. Docket No. 296 at 24-25; Docket No. 352 at 15. However, the threat posed by plaintiffs was not that they might act out in prison, but that, following September 11, they might contact individuals on the outside and therefore posed a threat to national security. The Court agrees with the magistrate judge that plaintiffs have failed to identify a genuine issue of material fact on this issue

and concludes that defendant had a legitimate penological interest in placing plaintiffs at ADX.

### 2. Extreme Conditions

The magistrate judge found that the conditions at ADX were not extreme. Docket No. 350 at 21-28. The magistrate judge noted that other cases in this circuit have considered this issue and have reached the same conclusion. *See Jordan v. Federal Bureau of Prisons*, 191 F. App'x 639, 652 (10th Cir. 2006) (finding four year detention at ADX did not give rise to liberty interest); *Georgacarakos v. Wiley*, 2010 WL 1291833 at *11-13 (D. Colo. March 30, 2010) (holding plaintiff at ADX did not have a liberty interest and finding conditions at ADX were not so extreme to be "atypical and significant" of their own accord). Moreover, since the magistrate judge issued her recommendation, a judge in this District has accepted an analogous recommendation and granted summary judgment in a case with similar facts. *See Rezaq v. Nalley,* 2010 WL 5157313 (D. Colo. Dec. 14, 2010). Plaintiffs provide no evidence that the conditions they experienced at ADX differed materially from the conditions experienced by the plaintiffs in *Jordan*, *Georgacarakos,* or *Rezaq.* Although plaintiffs did present evidence detailing the less restrictive conditions at the institutions in which they were housed prior to their transfer to ADX – evidence the court noted was missing in *Georgacarakos*, *see* 2010 WL 1291833 at *13 – it is not clear from *DiMarco* that these institutions are the proper baseline of comparison. *See DiMarco*, 473 F.3d at 1341-42 (declining to resolve the question of whether administrative segregation ought to be compared to conditions in the general population or other typical protective custody).

This is especially true given that the events of September 11, 2001 caused a change in what defendant perceived to be adequate security measures for plaintiffs.

Plaintiffs take issue with the magistrate judge's comparison of the conditions of confinement at ADX with the conditions of the facility in *Wilkinson*, arguing that using *Wilkinson* as a baseline is "unfounded on precedent." See Docket No. 352 at 2-3. There is, however, ample precedent for comparing an institution's conditions to those demonstrated in *Wilkinson*. See, e.g., *Jordan v. Federal Bureau of Prisons*, 191 F. App'x at 652; *Georgacarakos*, 2010 WL 1291833 at *12; *Warren v. Daniels*, 2010 WL 3175114 at *2 (D. Colo. Aug. 10, 2010); *Silverstein v. Federal Bureau of Prisons*, 704 F. Supp. 2d 1077, 1092 (D. Colo. 2010). Moreover, the distinctions between the conditions at ADX and the conditions in *Wilkinson* are more than merely "technical," as the plaintiffs claim. See Docket No. 352 at 3. Drawing all possible inferences in favor of plaintiffs, the evidence shows that inmates at ADX, unlike those in *Wilkinson*, have control over the lights in their cell, opportunity for outdoor exercise, regular contact with staff, and the ability to communicate with each other. See Docket No. 350 at 22.

Finally, plaintiffs argue that the magistrate judge did not properly consider the length of time they had been incarcerated at ADX as relevant to the extremity of the conditions there, in part because she improperly allowed this fact to be overridden by defendant's legitimate penological interest. See Docket No. 352 at 5-7. However, in considering whether the duration of plaintiffs' confinement made such confinement extreme, the magistrate judge also noted that plaintiffs had been incarcerated at ADX for approximately the same length of time as the inmates in *Jordan* and

*Georgacarakos*. *See* Docket No. 350 at 26-27. Although the length of confinement might make otherwise typical conditions extreme, *see Payne v. Friel*, 266 F. App'x 724, 728 (10th Cir. 2008) (finding duration of confinement by itself may be an "atypical and significant hardship"), the magistrate judge correctly found that the length of plaintiffs' confinement did not sufficiently distinguish their conditions from those found not to be extreme in *Jordan* or *Georgacarakos*.

### 3. Placement Increases Length of Sentence

The Court agrees with the magistrate judge that there is no evidence that placement at ADX increases the duration of an inmate's sentence, a factor which was relevant to the Supreme Court in *Wilkinson*, *see* 545 U.S. at 224, and, therefore, this factor weighs against finding a liberty interest here.

### 4. Indefinite Confinement

The magistrate judge found that there was no genuine dispute of fact as to the final *DiMarco* factor and that plaintiffs' confinement was not indeterminate. The magistrate judge reasoned that plaintiffs, unlike the inmates in *Wilkinson*, received a review of their placement at least every six months via program reviews, the process governing admission to the Step-Down program. *See* Docket No. 350 at 29-33. In *Georgacarakos*, the court found that inmates at ADX "hold the keys" to their release because they can obtain a transfer out of ADX via Step-Down. *Georgacarakos*, 2010 WL 1291833 at *13. Although plaintiffs may not have held the keys to their release when admission to Step-Down required them to mitigate the reasons for their original placement, that is no longer the case. *See* Docket No. 295-2 at 40 (listing eligibility

factors for admission to Step-Down as of October 8, 2009). Moreover, plaintiffs contest the meaningfulness of program reviews, claiming that these meetings are very short and only evaluate an inmate's eligibility for the program, not his actual admission. Docket No. 352 at 12. However, *DiMarco* does not require the level of process contemplated by plaintiffs in order for a term of confinement to be definite. *See DiMarco*, 473 F.3d at 1343-44. It is undisputed that plaintiffs received regular reviews of their confinement and the opportunity to present their views. *See id.* Therefore, I agree with the magistrate judge's finding that there was no material dispute as to whether plaintiffs' confinement was indefinite.

### III. CONCLUSION

The Court finds that all of the four *DiMarco* factors weigh against plaintiffs having a liberty interest in the conditions of their confinement at ADX. As both of plaintiffs' due process claims are premised on their having such a liberty interest, I agree with the magistrate judge that defendant is entitled to summary judgment on both of plaintiffs' remaining claims.

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 350] is **ACCEPTED**. It is further

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 295] and Supplement to Motion for Summary Judgment [Docket No. 337] are **GRANTED**. It is further

**ORDERED** that plaintiffs' Motion for Partial Summary Judgment [Docket No. 296] is **DENIED**.  It is further

**ORDERED** that plaintiffs' Motion for Oral Argument on Cross Motions for Summary Judgment and Related Objections to the Magistrate Judge's Recommendation [Docket No. 354], Petition for Writ of Habeas Corpus Ad Testificandum [Docket No. 361], Motion for Leave to File Initial Designations of Deposition Testimony Out of Time [Docket No. 363], and Motion for Leave to File Designations of Deposition Testimony Under Seal [Docket No. 364] are **DENIED** as moot.  It is further

**ORDERED** that defendant's Motion to Vacate Trial and Trial Preparation Conference [Docket No. 355] is **DENIED** as moot.  It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiffs.

DATED December 29, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge